and so I am ready to call the first case. Council is at the table and the first case that we will hear today is United States v. Moon Seals. Council, when you're ready, please come forward and proceed when you're ready. Thank you, Your Honor. May it please the court, Jake Rochebeau for the appellant, Mr. Moon Seals. This case involves three different approaches to sentencing on a probation revocation. This court's precedent and more requires a two-step process. First, resentencing of the original offense based on the original original guideline range and a separate sentence for the revocation based on the Chapter 7 guideline revocation range. Mr. Moon Seals has consistently argued that this is incorrect and that the sentence must be based on the Chapter 7 guideline range alone. The district court plainly erred in taking a third approach. It believed it had discretion to pick either range and it chose the original offense range. This court should remand under either one of two scenarios. First, Mr. Moon Seals urges the panel to seek en banc review to hold that probation revocation sentences must be based on Chapter 7 or in the alternative, this remand for resentencing under Moore's two-step process. The relevant statutes, legislative history, and guidelines make clear that a probation revocation sentence must be based on the Chapter 7 guidelines range alone. Section 3553A4 specifically provides the district court must consider, A, the guideline range applicable to the underlying offense or, in the case of a violation of probation for supervised release, the Chapter 7 guidelines. By using the disjunctive or the plain language of the statute does not permit Moore's two-step process, which requires one and the other. Do you contend that's so for supervised release as well as probation? Yes, Your Honor. Well, with a supervised release, a sentence of imprisonment has been imposed in which the Chapter 5 guideline has been calculated and the sentence imposed. Then there's a violation of supervised release. Isn't the court required to go back through and look at everything 3551 to 59 for the supervised release violation as well? And so it's going to hit that or and it's already done the A part. Does that mean it can't do the B part? For a supervised release revocation, I would say it's exactly the same. When you're going back through the 3553A factors, whether it's probation or supervised release, you apply only A for B. Okay. But for a supervised release, what I'm saying is the court is going to ultimately have used both A and B. At the original sentencing hearing, it would have considered A. And the same is true for probation, too. At the original sentencing, it would have heard A. And then now we're at a new proceeding, which is a probation revocation hearing. And just like with the supervised release revocation hearing, in both situations, you would have heard considered A the first time at the original sentencing and now at the revocation proceeding, B. Okay. And the legislative history confirms that that probation revocation sentencings are supposed to be based on A for B alone. The Third Circuit in Schweigel went through the legislative history of the amendment to 3553 that added A for B, went through the legislative history, which specifically said that the purpose of the amendment was to make clear that for probation and supervised release sentences, the applicable guidelines are those issued by the Commission specifically for that purpose. And that is Chapter 7. Those are the guidelines that the Commission promulgated specifically for probation and supervised release revocations. And Chapter 7 specifically and repeatedly says that in the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in Section 7B.1.4, the Chapter 7 revocation guideline range. It doesn't say, you know, in the case of revocation of probation, the violation is punishable under Chapter 7. It says in the case of revocation, the applicable range of imprisonment is that set forth in 7B.1.4. So it's talking about the total range of imprisonment. Do you agree that what underlies all of this is the letter from then-chairman of the Commission, Judge Wilkins, to Senator Thurmond, which is recounted in the congressional record with his recommendations and his reasons for the recommendations, and saying we're going to come forward. The brand new Sentencing Commission are going to come forward with a Chapter 7. We haven't done that yet. And United States v. Smith, the Circuit Court case, is telling us that we can only go to the top of the guideline range for the instant offense. And so there can be no incremental penalty under the existing law, according to the United States v. Smith help. What we need, we're telling you, Senator Thurmond, is going to be, we're going to add Chapter 7, but under United States v. Smith, no incremental penalty. We're pinched. So please, change the statutes in such a way that we can have both. I agree with the general premise of that. But that's in a pre-Booker world where the probation can only be a sentence where the guidelines was zero to six months. So with the new Chapter 7 guideline ranges, the sentences actually were higher. And so that did address that concern, that the sentences weren't harsh enough for probation revocations. I forgot what my next point was. But now, the guideline range is, you know, is what it is under supervised release and probation revocations. But the Court is not bound by the revocation range set out in Chapter 7. It is allowed to vary based on 3553A factors to anywhere within the original offense statutory range. Do you agree that we should look back, and when you say clear language and it's the or, that's not clear to me. Well, it is clear to me, but the other direction. Do you agree that we should look to the Judge Wilkins, Senator Thurmond communications in interpreting what that language means? I mean, my position is that it's that the language of the statute is unambiguous and so there's no need to resort to legislative history. But I think obviously we disagree on that. So when there is ambiguity, we can look at the legislative history. But I think the legislative history confirms, even if the concern was that these sentences aren't harsh enough, Chapter 7 was still promulgated to explain what the process should be for all revocation sentences. And that's what it laid out. It laid out the Chapter 7 guideline. I'm not entirely sure we do disagree based on your earlier answer, which was that whether you go A or B with that or in the middle, it depends on where you are in the proceedings. If you're at the original sentencing, you go to A, and if you're on a revocation, you go to B. And it could hardly say and, because that wouldn't make any sense the first time around. But the original sentence, and apply the one for the revocation, that would be senseless. So it has to be an or, doesn't it? Yes, I agree. I agree with that. When you said you would interpret it the other way, I thought you meant something else. But, so... Can I ask you this, and then I'll get out of the question business because I'm hogging all the time, but I'm interested. Is your position that on the probation violation, when the statute was changed in 94 in accordance with what Senator Thurman got from Judge Wilkins, when that statute was changed, it became, probation became a conditional sentence. It's a sentence, but it's a conditional one, which can be revoked. And then the other new word that is used is re-sentencing. When that happens, there's going to be a re-sentencing, which one way of looking at that may be, we're going to start over on your sentencing, you failed, and we're going to start right where we left off. And another way of looking at that, as I understand it, your view, which is the re-sentencing is just a rubber stamp that says, we said zero months for probation, so it's zero months. Is that your position, the re-sentencing in a probation case yields a zero-month sentence under Chapter 5? So under, assuming we're applying the two-step process, does it necessarily yield the zero sentence of imprisonment? Any process you want. No, because you're punishing for the breach, as Chapter 7 says, you're punishing primarily for the breach of trust of the violation of the condition. And that's what the table is set out to punish. And then you're not just getting off scot-free for the original offense. Presumably in every case, the judge is going to continue supervision. So the supervised release period... The question is, you know, on re-sentencing, if there's been a violation of probation, I read your submissions are saying that at Step 1, the sentence is zero, and then you go to Step 2. Now you're saying something else. So I'm, well, I'm trying to address two different... So under my interpretation of the statutes in Chapter 7, and when I'm arguing that the two-step process is incorrect, what I'm saying is that you apply only the Chapter 7 guidelines, which say to punish primarily for the breach of trust, but it is still... At Step 2? So under mine, there is, it's just one step. My proposed procedure, and the procedure, as far as I can tell, literally every federal... That's aspirational, because that's not where we are with More 2 confirms, More 1 was not dicta, and we do this two-step process. True. You're finished at least before us. So under the two-step process, my position is that More says at Step 1, you have to consider only pre-probation conduct. The judge has to put itself back in the same shoes that it was originally at when it ordered probation. It can't consider the fact that there was a later violation. And you're saying that you cannot consider the statutory sentence or the guideline range on the offense. Instead, it's zero. So I'm saying that it's zero, because if a district court judge is genuinely, faithfully adhering to Step 1, and putting itself in the original shoes, it's bound to sentence the defendant again, just at Step 1, to the functional equivalent of the same sentence it gave the first time, which is probation, which would be zero months followed by supervised release. So in the case of Mr. More, if we followed your process for a very bad crime, he would just get, you know, a couple years, right? For Mr. Moonseals or Mr. More? Mr. More. Mr. More? If you apply your paradigm. So what I'm saying is that at Step 1, Mr. Moore... Now, just, if you put, what would Mr. Moore's sentence be, range, under your paradigm? It's a hypothetical, but we do deal in hypotheticals. Right, so under the two-step process, Moore would still, it would be the original guideline range plus the revocation range. But what I'm saying is that at Step 1, the sentence that the district court, well, the problem, the problem with this hypothetical is that, is that Moore was, was truly unique in that there had been an announcement of an alternative sentence. But I'm saying, absent the announcement of an alternative sentence of imprisonment, for purposes of like third prong, whether this error was harmless, what we think that the district court would do on remand here would be, the most likely sentence is a massive downward variance from the guideline range of 31 to, 33 to 41 months imprisonment, because the first time the district court gave a massive downward variance. In substance and effect, your paradigm is that a very, perpetrator of a very, very serious crime, if given probation without any prognostication of what the sentence would be, gets off with the few months at Step 2. That's just the guideline range. The district court can still impose anywhere within the statutory range, and here that's zero to ten months. Sorry, zero to ten years. All the way up to a minimum mandatory ten years, if that was what was called for in the original violation. Absolutely right. The district court, all we're, all I'm arguing about is what is the applicable guideline range under the statute and the guide, and Chapter 7 of the district court, if that's not sufficient under the 3553A factors, can vary all the way up to 120 months in prison. Where in the statutes and the guideline is that mushing ever mentioned? I'm sorry? The mushing. We're going to do it all together in Chapter 7. Chapter 7 is the small island has now swallowed Chapter 5, the continent. Where is that ever mentioned in the guidelines of the statute? In 7B1.3, and we agree that Chapter 7 is the guidelines that the Sentencing Commission promulgated specifically to address revocations, says in the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in 7B1.4. Frankly, I don't think it could be any more clear that when we're sentencing upon a revocation, you look at the Chapter 7 table, and you can consider the totality of the circumstances. So does Moor 1. Moor 1 looks at that and sentences based on the revocation itself. And it, it, it has, Moor has, that's one component of it, but it adds the second component. Do you think this is a problem that under the mushing way of doing it under Chapter 7, this court is unable to review either piece because it doesn't know how much was given for the underlying sentence, or the underlying crime, how much was given for the revocation. And we're supposed to be reviewing those for substantive reasonableness. So all I'm saying is that the guideline range that applies is that found in Chapter 7, because that's what Chapter 7 says. The, the District Court then, if it finds that insufficient, can give an explanation based on the 30, other 3553A factors, and can vary to anywhere within the statutory range. And it can say that I'm doing that because you got a windfall the first time, you got a massive downward variance the first time, or I can say that, you know, I'm actually varying downward from the guideline range because this was more of like a technical probation violation that I don't think requires serious punishment. Or you already served four and a half years of probation, I don't think that I need to sentence you to a Assume you lose on the one step, and we're back where our precedent says we should be at more one. And you agree that the review is for plain air? Yes, Your Honor. All right. Tell me why you should not lose on plain air at the third step. In the, what was it, 36 months sentence? Yes, Your Honor. So, at step one, my position is that, so I'm arguing that... No, no, no. You're stuck. You now have to argue more one. Yes, I understand. So what I'm saying, so he got 36 months of imprisonment, that was the sentence. On remand, there's a reasonable probability that he would get a different sentence because at step one, the district court has to put itself back in the original shoes of when it imposed probation. And what I'm saying is that it would give the functional equivalent of probation, it would have to, and that would be zero months of imprisonment, or at least under the guidelines, the functional equivalent is that zero to six months of imprisonment range. And then at step two, the guideline range is three to nine. And I admit that it's likely that the district court would impose an upward variance at step two, but to say that we're sure that the district court varied all the way to exactly 36 months as opposed to something, you know, 35 months, 34, 33, 32, there's a reasonable probability that under this two-step process, he would still end up with less than 36 months. All right, thank you counsel. Just to advise in advance, I'm gonna give you a couple of minutes on rebuttal so you're gonna have extra time if you need it. Thank you very much. May it please the court, Jess McHugh for the United States. Your Honors, I want to pick up where we just left off with prong three of plain error, as Judge Murphy was asking about. And I believe a faithful application of more one means that prong three cannot be satisfied for two reasons. First, what we're looking at is had the district court strictly applied more one, there would have been two sentencing ranges, not one. And I'm not the best at math, which is why I went to law school, but two is bigger than one. Secondly, the locked-in argument, it just doesn't work. And I'm gonna go one at a time here. So first off, the original range, the original offense range, that's what the district court applied. Correctly, I believe. And it was 33 to 41 months. Had the district court also done the three to nine months, there's a 36 to 50 months. He got 36. So I'm not sure how he would have been better off with aggregating two ranges rather than only getting one. What do you mean the locked-in doesn't apply? So for two, again, two reasons. The locked-in doesn't apply because it really collapses Moore's two-step analysis. What do you think the locked-in even means? I guess we should start with that. I think if I had to kind of put my words into it, it's that this notion of we can't consider pre-probation or post-probation conduct. We go back in time to step one. Step one, you only look at pre-probation conduct. So if you're only looking at that universe, it's zero. Probation is effectively zero months. The problem with that is, is that when we're going back in time, probation is now off the table. And so Moore talks about requiring a re-evaluation. And that, I think that's very clear that there has to be something to re-evaluate. Now if all we're looking at is, did the district court say, I'm gonna give you probation or I'm gonna give you X number of months? Well, let me tell you what I think locked-in is, and then you tell me what you're talking about. Moore won. The district court said, you're gonna get 51 months today. We've been through the PSR. I see the total offense level. I see the criminal history. You're gonna get 51 unless you want to do this probation thing. But if you screw up, you're gonna get 84 months. And Moore won said, you locked into 51 because that was the PSR, the criminal history. And that was unusual. As your fellow counsel says, it was unusual for the court to arrive at that number in a probation case. But the court did. And the locked-in meant that you can't say it's 51 months based on that and later come in and say, well, it's a different number. Here we don't have anything locked-in because the court didn't give a number, right? That I agree, Your Honor. I think in the unusual circumstance where a court announces an alternative, like 51, yeah, it's locked into that. It can't go back and effectively change its mind. Why are we talking about locked-in? I think the locked-in comes because of the notion that, well, probation was imposed, ergo it must always be zero months at step one. And I don't think that that is a faithful application. Well, what do you think the word re-sentencing means in the statute? I think it means what more one said it means. And I also think we look at some of these other circuits, like Eighth Circuit Michael talked about, we're sentencing anew. And that's 12th F. 4th 858. If we're re-sentencing anew, we are going back in time. That is, you know, so we're going to look at the original offense range, and then Chapter 7 very clearly says to your to your mushing point that we're only, Chapter 7 says we're only imposing violations or punishment for the violation. It says that in the intro to Part B. So if there's no punishment then effectively for the original offense, that's kind of an absurd interpretation. I don't think statutes should be interpreted to yield absurd results. And so that's why I would submit that the locked-in approach really doesn't work. So if we are talking about a locked-in, he landed on 36, but he was faced with three to three to nine. So that would effectively mean this two-year string of threatening public officials, pleading guilty to 12 felonies, immediately violating probation, and then he is effectively lowering his offense range from 33 to 41 down to three to nine. Doesn't Chapter 7 look at the grade of the offense, the violation? It does, Your Honor. And C being the lowest? Correct, Your Honor. All right, and and so because it's set up that way, it really doesn't have anything to do with the original crime, right? I don't believe that it does. Chapter 5 is what really speaks to the original crime. And does that suggest that what's being done with Chapter 7 is looking at that violation? Correct, Your Honor. As opposed to everything under the sun? And that's why three to nine months makes perfect sense for a grade C violation. But if all of a sudden we're revoking probation, which was conditional in the first place, that original 12-count indictment has no sentence. And that just doesn't make sense. Okay, so you're opposing the zero-month theory? I'm opposing, sorry, Your Honor? The defense is zero-month. I, yeah, I don't believe that we're locked in at zero at step one. Okay. Now secondly, I would, I guess, throw out the alternative argument. If we are locked in and somehow step one, had we strictly applied more to step one. Step one says, okay, should have been probation, thus zero months. Then how do we get to 36? Under that framework, again, we got the three to nine month under Chapter 7. Bless you, Your Honor. 7B1.4, note 4, discusses downward departures. And, and it's also been interpreted to include variances. That's really where we now have to consider what was the leniency that was given at first place. We have an immediate violation of probation, and we had a downward variance of 33 months. 33 to 41 was the original offense range. He got zero. So now we take that 33, 33 months of leniency, we tack on to the three to nine under Chapter 7, and there's your 36. So there's no reasonable probability of a different outcome, frankly, even under the locked-in argument. Your Honors, I know we spent. Yes, sir. Is your view on that affected in any way by the way the District Court, in this case, proceeded with the resentencing? I mean, it really didn't follow Moore 1. No, that's correct, Your Honor, and that's why we are here on plain error. There's no dispute that Moore 1 was not applied. I understand that, but what you have to be arguing now is that if it was remanded, he'd get exactly the same sentence or more. My question is, isn't your argument in that effect affirmatively backed up by the error that the District Court made, and if we send it back to re-sentence under Moore 1 properly, that he would get the same or greater sentence? I believe that's true. I believe it would get the 36 months under a strict application of Moore 1 versus what we had here, which was this either-or. We still end up at the same place. Your Honors, unless there's no further questions, I did, we briefed invited error, we briefed the appellate waiver, but I do believe that this case rises and falls on Prompt 3. So I think this case rises and falls on Prompt 3 of plain error. So no further questions. Thank you, counsel. Thank you. As promised, two more minutes. You should thank your opposing counsel for this too, because he yielded time to you. Do I get his time too? No, you don't. So I do want to address third prong, and let me try this one more time. So in Moore, we knew what step one was going to be, because the District Court had announced what the alternative sentence of imprisonment would have been. It would have been 51 months. Here we don't know, because the District Court didn't announce an alternative sentence. So even, even assuming that you reject the locked in at zero argument, I'm fine with that. Now we're just asking, what is the most likely sentence the District Court would give at step one? And in doing that, we consider the original offense guideline range, which was 33 to 41. But we have to also understand that the District Court gave a massive downward variance the first time. Giving probation is like giving, so probation is only. It's not a variance unless he gave zero. So it is a variance. If he instead were saying, if you screw up, the statute says there's going to be a re-sentencing, and we're going to pick up right where we're leaving off today, and I'm going to be looking at that Chapter 5 guideline. There's no variance, because there hasn't been a sentence yet. There is a sentence. The sentence is probation. A conditional sentence subject to living up to probation. The statute says conditional. It is conditional in that it can be revoked. It is still not like there's a conditional judgment. Probation is a, is a sentence of punishment in itself. Do you agree that it is a conditional sentence, probation, under our statutes? It is conditional only in the sense that it can be revoked, yes. And then there's no sentence, so you start all over with re-sentencing, correct? Right, based on the Chapter 7 guidelines. Everything that you, that you could have considered had you sentenced rather than giving probation, correct? Yes, Your Honor. So you look at that original range? Yes, Your Honor. The 33 to 41 months? Yes, Your Honor. I realize I'm out of time. If I can make, try to make one quick point, and that's that, you know, and I can provide some supplemental authority on this point, that probation is a downward variance from a sentence of imprisonment. Probation is only allowed when the sentencing range is zero to six months. So what I'm saying is, and the PSR itself says that probation is only allowed, that probation would be a downward variance here, and that's because it's only allowed as a sentence when the guideline range is zero to six months of imprisonment. So what I'm saying is that the likely sentence that the district court would give on remand at step one is in that zero to six month ballpark, because it would have to give a downward variance again. Thank you very much for your time. Thank you, counsel. The case is submitted, and you are excused. I appreciate the arguments.